Nott, J.,
delivered the opinion of the Court:
This case now comes before us on its second trial. By the decision previously rendered the amendment allowed to the claimants was expressly restricted to the delay which might have been caused by the astronomer of the United States on two occasions which were specified. The issue tendered by the claimants under this permission to. amend is broader and different from that prescribed by the court, and the evidence given under it goes far beyond the limits which we contemplated when the amendment was allowed; but inasmuch as the Solicitor of the United States accepted the issue without objection, and raised no' objection to the evidence offered under it, they are necessarily before us.
And, first, it is insisted by the claimants that the contract hound the United States “ to determine and establish the initial points from which the survey should proceed” “ within six months from the date of their contract.”
This, taken literally, manifestly cannot be so ; for the work under the contract was to commence at some future time, dependent upon the movements of the claimants; and the instructions which accompanied and formed a part of it expressly say : “ The astronomer will, therefore, bo ordered to report to jonw/ienever you signify your readiness to execute the above bounden duty.” The astronomer’s duties, therefore, were not to begin until the claimants should signify their readiness; and they have not proved that they ever did, or thrown on he United States the responsibility of even furnishing an astronomer.
*267 Blit while this averment is entirely without foundation, the contract does contain the following provision, which may "form the foundation for a somewhat similar obligation :
“And it is further understood and agreed between the parties to this agreement, that an astronomer shall be appointed by said Charles E. Mix, in his capacity aforesaid, and his salary, at the rate of twenty five hundred dollars per annum, be paid by the said Charles E. Mix, out of whatever money may be due the said Jones & Brown for the services herein agreed upon, upon conditions, herein expressed; but all other expenses incidental to the performance of the duties required of him, the said astronomer, in the field, to be paid by the said Jones & Brown; and the said astronomer shall be responsible to the United States for the determination of such astronomical points as may be necessary to fulfil the conditions of this agreement. Said astronomer shall therefore he allowed ample time and facilities for fixing said astronomical points, viz : the 100th and 98th meridians, to his satisfaction, provided not more than six months he exceeded.”
When this case was under advisement before, we considered this provision, and were of the opinion then, and are of the opinion now, that the limitation of six months was not intended to bind the United States for the completion of the astronomer’s work, but to relieve the claimants from paying his salary for any longer period. This conclusion is strengthened by the subsequent evidence of the claimants, which shows that three months, or lunations, are necessary for fixing a single initial point. The intent of the contract was that the astronomer should have ample time and facilities at the expense of the contractors, “ provided not more than six months be exceeded; and if they were exceeded, then his time and facilities were to be at the cost of the United States. It could never have been intended that the government should contract to do a thing the doing of which depended almost wholly upon the other contracting parties.
The claimants also insist that the delay of the astronomer in fixing the first initial point prevented their completing all the work required by the contract before the setting in of winter in 1858; and hence that all the expenses which accrued thereafter, including the unavoidable suspension of the work during the winter, should be borne by the government. This assumption is negatived by a single fact, viz: that the claimants themselves subsequently contributed to the delay; and this fact can be best shown in their own language, being a part of their report to the Commissioner of Indian Affairs, dated at Fort Smith, Arkansas, September 13, 1858, and in these words :
*268 “Sir: We wrote to the department on the 28th ultimo, to inform • you of our arrival at "this place. The weather having become so excessively hot, the country somewhat unhealthy, water scarce, and the field party more or less sick from incessant labor, that after completing the 98th meridian and the Seminole boundary, we thought it advisable to draw off the party for a month, in order that our stock especially should obtain rest and recover sufficient energy to endure the coming fall campaign.
“ We were also induced to suspend the workfor a short time, knowing that a large body of Comanche Indians were assembled along the Canadian river in the neighborhood of the 100th meridian in the vicinity where toe contemplated establishing our observatory ; but the recent attacks of these wild tribes occasioned us to pause before risking the valuable instruments in our care, and which belong to the general government.
“ The Witchitas, Delawares, Seminóles, and other friendly tribes advised us not to go further west until a better understanding could be had with these Comanches.
.“ They are assembled in large force — our party is small — and although they did not molest us during the survey of the 98th meridian, they were continually hovering around us, whether from hostile motives or actuated from curiosity, we cannot say. We endeavored to communicate with them, but they kept aloof. We are of the opinion, however, that they do not wish to kill or to be Jtilled, but the propensity to steal horses and mules is an uncontrollable passion among all Indians on the frontier.
“ Second. We are now employed on our field notes and maps. Within a week we will forward to the Department the entire work of the 98th and the Seminole boundary. As soon as we mail this work it is our intention immediately to return to Fort Arbuckle, and to go directly out to the 100th meridian, feeling confident that we can carry through this line with the same success as those recently completed, provided the military now ordered out under the command of Major Van Dorn were instructed to afford us the necessary protection, if we are compelled to request it of them.”
There were, therefore, three reasons why the claimants suspended the work- for at least one month: 1st, because many of their field party were sick from excessive labor; 2d, because they thought it advisable to let their stock obtain rest and recover energy; 3d, because they had doubts about venturing near the Indians assembled on the *269 Canadian. In none of these reasons were the United States legally-interested, and none can he deemed, a sufficient excuse at law. In the decision previously rendered, it was held that the Indian hostilities were a part of the claimants’ risk, and this report shows that up to this time the hostilities did not amount to anything more than the usual Indian propensity to steal horses. That was not enough to excuse the claimants from pushing their work, especially as the delay caused by the astronomer had already occurred. They, therefore, must be deemed to have contributed to the subsequent misfortune of spending a second winter before completing their survey.
The contract also contains the following provision:
“ That they, the said Jones and Brown, will complete these surveys in the manner described in said special instructions, and return the true and original field-notes thereof to the office of the said Commissioner of Indian Affairs on or before the first day of March, 1859, (acts of God excepted,) on penalty of forfeiture and payment to the United States of the sum mentioned in the annexed bond.”
This provision the claimants insist boimd equally the United States; so that if the former were not excused by Indian hostilities from carrying on their survey, the latter were not excused from establishing their initial points. This position, if tenable in law, is completely overthrown by the evidence of the claimants’ witness, Mathews, the principal assistant and computer of the astronomer, who expressly testifies: “ The surveying party were detained in making their survey in 1S58 by their fear of hostile Indians. Mr. Majors (the astronomer) was not delayed by that cause, but by bad weather.”
The reasons, therefore, advanced by the claimants are insufficient, and the case comes back to the two grounds indicated by the court when a new trial was awarded. The evidence in regard to these is neither clear nor satisfactory; yet, as all of the witnesses agree that the non-establishment of the initial points was a cause of delay, and the weight of testimony leads to the conclusion that the establishing of the initial point of the 98th meridian was delayed needlessly by the astronomer, and that of the 100 th meridian was prolonged by the permission of the government, we find to that extent in favor of the claimants. The evidence as to damages is also less explicit than it might be, and leaves some items of their claim entirely unproved. After weighing it carefully, we find that the claimants were delayed by the non-establishment of the 98th meridian one month and seventeen days, and that their -expenses and services were at the rate of #2,350 per month. And that they were delayed with respect to the *270 100th meridian one month, during which time their expenses were $2,825.
Mr. T. J. D. Fuller and A. L. Merriman for the claimants.
Mr. Ketcham, the Solicitor, and Mr. Weed, the Assistant Solicitor, for the government.
The judgment of the court is that the claimants recover judgment for the sum of $6,501.